Slip Op. 09-142

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────┐
│                                      │
│  HARTFORD FIRE INSURANCE COMPANY,    │
│                                      │
│                  Plaintiff,          │
│                                      │
│          - v -                       │
│                                      │
│  UNITED STATES,                      │
│                                      │
│                  Defendant.          │
│                                      │
└─────────────────────────────────────┘
```

Before: Pogue, Judge

Court No. 07-00067

OPINION

[Defendant's motion to dismiss for lack of subject matter
jurisdiction granted.]

Dated: December 16, 2009

Barnes, Richardson & Colburn (Frederic D. Van Arnam, Jr., Daniel
F. Shapiro, and Eric W. Lander) for the Plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson,
Director, Franklin E. White, Jr., Assistant Director, Commercial
Litigation Branch, Civil Division, U.S. Department of Justice,
(Michael J. Dierberg); and Beth C. Brotman, Office of Assistant
Chief Counsel, U.S. Customs and Border Protection, Of Counsel,
for the Defendant.

**Pogue, Judge:**  In response to a demand by the United States

Bureau of Customs and Border Protection ("Customs") for the

payment of antidumping duties secured by Plaintiff Hartford Fire

Insurance Company's ("Plaintiff" or "Hartford") bonds, Plaintiff

brings this action, asking the court to declare its bonds

unenforceable.  Pursuant to USCIT R. 12(b)(1), Defendant moves to

dismiss, claiming a lack of subject matter jurisdiction because

of Plaintiff's failure to utilize or exhaust its administrative

protest remedies.  For the reasons stated herein, the court
grants Defendant's motion.

## BACKGROUND

Customs' demand sought payment under eight single entry
bonds issued by Hartford to secure entries of frozen cooked
crawfish tail meat from the People's Republic of China (the
"Hubei entries").  The Hubei entries were imported into the
United States between July 30, 2003 and August 31, 2003 by
Sunline Business Solution Corporation ("Sunline"). (See Am.
Compl. ¶¶ 2, 8-9, 13; Pl.'s Resp. in Opp'n to Def.'s Mot. to
Dismiss ("Pl.'s Resp.") 1-2.)

The Hubei entries were liquidated in July 2004 and March
2005 at an antidumping duty rate of 223%, following an
antidumping administrative review. (Am. Compl. ¶¶ 10-12.)
Sunline has made no payment of these antidumping duties, and on
June 22, 2005, Customs made a demand on Hartford for, inter alia,
the value of the eight bonds Plaintiff issued to secure payment
of duties on the Hubei entries. (Id. ¶ 13; Pl.'s Resp. 2.)

Prior to Customs' demand, Hartford was informed, on May 6,
2005, by an outside source, that certain Sunline personnel had
been arrested for filing false invoices with Customs. (Aff. of
Daniel F. Shapiro, Esq. in Supp. of Pl.'s Resp. in Opp'n to
Def.'s Mot. to Dismiss ("Shapiro Aff.") ¶ 4; Pl.'s Resp. 2.) See
United States v. Shen, No. 03-CR-1208 (C.D. Cal. Nov. 25, 2003)

(cited in Shapiro Aff. ¶ 7).  Nonetheless, Hartford did not file

a timely protest, pursuant to Section 514 of the Tariff Act of

1930, as amended, 19 U.S.C. § 1514 (2006),[1] regarding the June

22, 2005 demand for payment.

Accordingly, on September 20, 2005, the time period for

protesting Customs' June 22, 2005 demand against Hartford with

respect to the Hubei entries expired. (Pl.'s Resp. 8; Def.'s

Reply Br. in Supp. of its Mot. to Dismiss ("Def.'s Reply") 3.)

See also 19 U.S.C. § 1514(c)(3) (2000) (amended 2004) ("A protest

by a surety which has an unsatisfied legal claim under its bond

may be filed within 90 days from the date of mailing of notice of

demand for payment against its bond.").[2]

Plaintiff alleges that, rather than initiating a protest, on

October 7, 2005, Plaintiff requested a copy of the court case

file for Shen, No. 03-CR-1208, from the United States District

Court for the Central District of California. (Shapiro Aff. ¶ 7.)

---

[1] Unless otherwise noted, further citation to the Tariff Act
of 1930 is to Title 19 of the U.S. Code, 2006 edition.  In
relevant part, 19 U.S.C. § 1514(a) provides that "decisions of
the Customs Service . . . as to . . . charges or exactions . . .
shall be final and conclusive upon all persons . . . unless a
protest is filed in accordance with this section . . . ."

[2] Subsection 1514(c)(3) was amended in 2004 to extend the
protest filing period to 180 days from the date of mailing of
notice of demand for payment, Pub. L. 108-429, § 2103(2)(B)(iii),
118 Stat. 2598; however, this amendment applies solely to entries
made on or after the fifteenth day after December 3, 2004, see
id. at § 2108, and is therefore not applicable here.

On October 14, 2005, Plaintiff received a copy of this case file.
(<u>Id.</u> ¶ 9.)  The file was complete, with the exception of pages 1-
38 of the "April 2004 Reporter's Transcript of Proceedings,"
which were received by Plaintiff on November 22, 2005. (<u>Id.</u>)  As
a result of reviewing the <u>Shen</u> case file, sometime between
October 14, 2005 and November 2, 2005 Plaintiff ascertained that
1) on June 19, 2003, Customs had been informed by letter from
Shanghai Taoen International Trading Co. ("STI letter") of the
illegal importation of crawfish tail meat into the United States
from China; and 2) that Customs had released to Sunline
approximately $270,256 in cash deposits posted to secure other
entries of crawfish tail meat from China. (<u>See</u> Shapiro Aff.
¶¶ 10-13.)

Plaintiff filed suit in this Court on February 26, 2007.  In
its amended complaint, Plaintiff alleges 1) that Customs' failure
to disclose to Hartford the fact of Sunline's investigation for
illegal importation of crawfish tail meat prior to Hartford's
issuance of bonds securing the Hubei entries "materially
increased Hartford's risk . . . beyond that level of risk which
Hartford intended to assume on those bonds" (Am. Compl. ¶¶ 34-
35), thereby constituting a material misrepresentation fatal to
the formation of an enforceable bond agreement (<u>id.</u> ¶¶ 41-42);
2) that, "[b]ased on its investigations, Customs knew or should
have known that Sunline had induced Hartford to issue the bonds

covering the Hubei entries through fraud or material
misrepresentations" (id. ¶ 47), and that, as a result, "Customs
did not, and could not, in good faith materially rely on the
bonds issued by Hartford for the Hubei entries" (id. ¶ 48);
3) that, prior to releasing to Sunline cash deposits securing
other entries of tail meat from China, Customs knew or should
have known that the Hubei entries were as yet unliquidated and
subject to an increase in dumping duties owed, and that, by
releasing this "collateral," Customs increased Hartford's risk,
thereby reducing Hartford's obligation to pay by the amount thus
released (id. ¶¶ 53-62); and 4) that Hartford's obligation to pay
should in any case be reduced by the amount of the released cash
deposits because Customs "did not act with good faith and fair
dealing when it refunded proceeds without notifying Hartford,"
denying Hartford the opportunity to seek relief under the
equitable doctrine of set-off (id. ¶¶ 64-69).

     For these reasons, Plaintiff contends that its bonds
securing the Hubei entries are unenforceable as a matter of
contract and suretyship law or, in the alternative, that its
obligation to pay should be offset by the amount that was
refunded by Customs to Sunline in connection with other entries.
(See Am. Compl. ¶¶ 34-69.)

     In its complaint, Plaintiff seeks to invoke the court's
jurisdiction pursuant to 28 U.S.C. § 1581(i) (Am. Compl. ¶ 28),

which grants the court exclusive residual jurisdiction over

certain civil actions against the United States not covered by

subsections 1581(a)-(h).

Defendant seeks dismissal, arguing that Hartford's claims

could have been asserted in a timely protest and that

jurisdiction for Hartford's challenge to Customs' charge must

therefore be established pursuant to 28 U.S.C. § 1581(a).[3] (See

Def.'s Mem. 1-2.)

## STANDARD OF REVIEW

Plaintiff, as the party seeking to invoke the court's

jurisdiction, has the burden of establishing that jurisdiction.

Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir.

1993).  Where, as here, the Defendant brings a facial challenge

to dismiss for lack of subject matter jurisdiction, the factual

allegations in Plaintiff's pleadings "are taken as true and

construed in a light most favorable to the complainant." Id.

(citation omitted).  On the other hand, Plaintiff's "mere

recitation of a basis for jurisdiction" is not controlling;

rather, the court must determine the "true nature of the action,"

Norsk Hydro Canada, Inc. v. United States, 472 F.3d 1347, 1355

(Fed. Cir. 2006) (internal quotation marks and citation omitted),

---

[3] In relevant part, 28 U.S.C. § 1581(a) provides that the
court "shall have exclusive jurisdiction of any civil action
commenced to contest the denial of a protest, in whole or in
part . . . ."

and, where Plaintiff's factual allegations fail to establish a
basis for subject matter jurisdiction over the true nature of
Plaintiff's action, because Plaintiff has another adequate and
reviewable remedy which applies, the case will be dismissed. See
Hartford Fire Ins. Co. v. United States, __ CIT __, 507
F. Supp. 2d 1331 (2007) (relying on Parkdale Int'l, Ltd. v.
United States, 31 CIT 720, 491 F. Supp. 2d 1262 (2007) and
Abitibi-Consol., Inc. v. United States, 30 CIT 714, 437 F. Supp.
2d 1352 (2006)), aff'd, 544 F.3d 1289 (Fed. Cir. 2008) ("Hartford
I").

## DISCUSSION

By bringing this action, Hartford seeks to avoid payment of
Customs' demand upon its bonds. See Hartford I, 544 F.3d at 1293.
Thus, as in Hartford I, the "true nature" of Hartford's claim is
that it is a challenge to that charge.  As in Hartford I, "[t]he
unenforceability of the bonds [Plaintiff] alleges in its
complaint is merely a theory of defense upon which Customs may
grant the relief of cancelling the charge.  In other words,
despite alleging otherwise, Hartford is challenging a charge."
Id.  "[T]he proper mechanism to challenge a charge is [by] a
protest before Customs pursuant to 19 U.S.C. § 1514(a)(3)," id.,
denial of which protest may be reviewed in this Court pursuant to
28 U.S.C. § 1581(a).  It follows that the exercise of
jurisdiction over Plaintiff's case under subsection 1581(i) is

precluded by Plaintiff's failure to utilize the administrative protest remedy available to it. See id.

Plaintiff makes two alternative arguments in support of its claim that jurisdiction is nevertheless proper here pursuant to 28 U.S.C. § 1581(i). First, Plaintiff alleges that it learned of the bases for its present causes of action after the period for protesting Customs' demand for payment on Plaintiff's bonds for the Hubei entries had already expired. Plaintiff argues that because Hartford therefore could not have availed itself of the protest remedy, jurisdiction under 1581(i) is appropriate in this case. (See Pl.'s Resp. 5-13 (citing St. Paul Fire & Marine Ins. Co. v. United States, 959 F.2d 960 (Fed. Cir. 1992)).)

Plaintiff's alternate ground for 1581(i) jurisdiction asserts that Hartford's claim is independent of the liquidation of the Hubei entries. Plaintiff contends that because, regardless of the status of liquidation, these bonds would have been subject to nullification by Hartford upon discovery of the contractual formation flaws it now alleges, Hartford's claim should be conceived not as the protest of a charge that could have been brought under 1581(a), but rather as a broader contractual claim that properly belongs under 1581(i). (See id. 13-16 (citing Washington Int'l Ins. Co. v. United States, 18 CIT 654 (1994) (relying on Old Republic Ins. Co. v. United States, 10 CIT 589, 645 F. Supp. 943 (1986))).) The court will consider

each argument in turn.

    I.   <u>Late Discovery of Bases for Protest</u>

    As mentioned above, taking Plaintiff's allegations as true for purposes of this facial challenge to subject matter jurisdiction, Plaintiff discovered the two pieces of information underlying its present claims upon reviewing the <u>Shen</u> case file at some point between October 14, 2005 and November 2, 2005. (<u>See</u> Pl.'s Resp. 10 ("The discovery of the reference to the STI letter is the key piece of information upon which Hartford's first and second causes of action hinge."); <u>id.</u> at 2 ("Hartford learned of the STI letter [] after it had requested the public portion of the <u>Shen</u> court file, and found reference to it therein."); <u>see also</u> Shapiro Aff. ¶¶ 10-11; Pl.'s Resp. 11 ("Hartford's third and fourth causes of action[] are based on Customs['] release of collateral . . . associated with the Hubei entries. . . . Hartford [] learned of [this release] after requesting, receiving and reviewing the <u>Shen</u> case file."); <u>see also</u> Shapiro Aff. ¶ 13.)

    Because the period for protesting Customs' demand for payment on the bonds covering the Hubei entries expired on September 20, 2005, Plaintiff contends that this case is analogous to <u>St. Paul</u>, where the court held that when a surety "alleges [that] it did not know of the now-asserted legal basis for protesting the government demand within the time frame set by the statute for a protest[,] [then] . . . the administrative

procedures regarding protests [do not necessarily] bar the
assertion of a later discovered claim." (Pl.'s Resp. 7 (quoting
St. Paul, 959 F.2d at 963-64).)

    While it is true that "[n]o administrative procedure exists
to cover the unusual situation where a claim does not accrue
until after the protest period has expired," St. Paul, 959 F.2d
at 964, it is equally true that a claim accrues when "the
aggrieved party *reasonably should have known* about the existence
of the claim." Id. (emphasis added) (citing Chevron U.S.A., Inc.
v. United States, 923 F.2d 830, 834 (Fed. Cir. 1991); Hopland
Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed.
Cir. 1988); Welcker v. United States, 752 F.2d 1577, 1580-81
(Fed. Cir. 1985); Braude v. United States, 585 F.2d 1049, 1051-53
(Ct. Cl. 1978); Japanese War Notes Claimants Ass'n of the
Philippines v. United States, 373 F.2d 356, 359 (Ct. Cl. 1967));
see also Mitsubishi Elecs. Am., Inc. v. United States, 44 F.3d
973, 978 (Fed. Cir. 1994) (same).

    In this case, taking Plaintiff's allegations as true,
Hartford first learned of the Shen case and its potential
relevance to Hartford's bonds securing other Sunline entries on
or about May 6, 2005. (Pl.'s Resp. 12 n.3; Shapiro Aff. ¶ 4.)
Nevertheless, it was not until October 7, 2005 – a full four
months later – that Hartford requested a copy of the Shen case
file, which it obtained one week later. (Shapiro Aff. ¶¶ 7,9.)

Because Plaintiff learned of the facts underlying all four of its present claims from reviewing this 2003 case file (see Pl.'s Resp. 2, 10-11; Shapiro Aff. ¶¶ 10-13), had Plaintiff requested a copy of this file in a reasonably prompt manner, it could have discovered the bases for all of its present claims well within the then-90 day period for filing its protest with Customs.

Unlike St. Paul, therefore, where the plaintiff had first filed a timely protest with Customs on other grounds and only subsequently, during review of the denial of that protest under subsection 1581(a), was made aware for the first time of facts supporting a different claim, St. Paul, 959 F.2d at 961, 963-64, Hartford reasonably should have known about the existence of its claims within the time period allotted for filing a protest with Customs, see, e.g., Pomeroy v. Shlegel Corp., 780 F. Supp. 980 (W.D.N.Y. 1991) (plaintiff's claim accrued when he learned of the existence of litigation potentially relevant to his claim, and plaintiff failed to exercise due diligence by waiting three months to obtain a copy of the complaint from that case). Hartford's failure to avail itself of the administrative procedures available to it does not negate the effect of the availability of those procedures. The availability of that adequate protest remedy precludes the exercise of jurisdiction over Plaintiff's present case under subsection 1581(i). See id. at 964; Hartford I, 544 F.3d at 1292-93.

Accordingly, because Plaintiff's claims are within the scope
of claims protestable before Customs pursuant to 19 U.S.C.
§ 1514(a)(3), <u>see</u> <u>Hartford I</u>, 544 F.3d at 1294, and because
Plaintiff could and should have reasonably known of the existence
of its present claims against Customs within the statutorily
prescribed time period for filing protest against Customs'
demands for payment, <u>see, e.g.</u>, <u>Pomeroy</u>, 780 F. Supp. 980;
<u>Johnston v. Standard Min. Co.</u>, 148 U.S. 360, 370 (1893) ("[T]he
plaintiff is chargeable with such knowledge as he might have
obtained upon inquiry, provided the facts already known by him
were such as to put upon a man of ordinary intelligence the duty
of inquiry."), the court concludes that "Hartford could have
brought its claim through the protest mechanism, the denial of
which would have triggered review pursuant to subsection
1581(a)," <u>Hartford I</u>, 544 F.3d at 1293, and that "[i]ts failure
to do so renders subsection 1581(i) unavailable." <u>Id.</u>

    II.  <u>Argument that Claims are Independent of Liquidation</u>

    As noted above, Plaintiff also argues, in the alternative,
that jurisdiction over this case under subsection 1581(i) is
proper because the true nature of its claims is not the protest
of a charge demanded pursuant to liquidation of the Hubei
entries, but is rather in the nature of broader contractual
claims, which "are not of the type [that] Congress intended to
subject to the protest mechanism and section 1581(a)

jurisdiction." (Pl.'s Resp. 16.)

     In support of its argument in this respect, Plaintiff relies

on <u>Washington Int'l Ins. Co. v. United States</u>, 18 CIT 654 (1994)

(Pl.'s Resp. 15-16), which itself relies on <u>Old Republic Ins. Co.

v. United States</u>, 10 CIT 589, 645 F. Supp. 943 (1986), <u>Washington

Int'l</u>, 18 CIT at 656.  <u>Old Republic</u>, and accordingly <u>Washington

Int'l</u>, are inapposite for the same reasons as those explained in

<u>Hartford I</u>, __ CIT __, __, 507 F. Supp. 2d at 1336  ("In <u>Old

Republic</u>, the court permitted a surety's contract challenge to

the collection of duties to proceed under section 1581(i) where

the claims could not have been made under section 1581(a)

because, despite Plaintiff's protest and payment of the duties

involved, Customs had legitimately extended the time for

liquidation of the goods at issue.  Consequently, the <u>Old

Republic</u> court assumed that section 1581(a) jurisdiction was not

available.  Also, unlike the plaintiff in <u>Old Republic</u>, Plaintiff

here has failed to utilize its administrative protest remedy."

(citations omitted)).

     Plaintiff has not offered any new arguments or evidence to

distinguish the present case from <u>Hartford I</u>, where the court

concluded that "Customs' charge required that Plaintiff make

payment under its bond; Plaintiff objects, and thus the true

nature of its complaint is to avoid making the requested

payment," <u>Hartford I</u>, 507 F. Supp. 2d at 1336; <u>see also</u> <u>Old</u>

<u>Republic</u>, 10 CIT at 598, 645 F. Supp. at 952 ("Where jurisdiction

is asserted under 1581(i), the court . . . must determine the

thrust of the complaint." (internal quotation marks and citation

omitted)).  Therefore, the court concludes that Plaintiff's

claims in this action, like its substantively similar claims in

<u>Hartford I</u>, are precisely the type of claims that could have been

brought in a protest with Customs,[4] and hence that jurisdiction

pursuant to subsection 1581(i) is not available in this case. <u>See</u>

<u>Hartford I</u>, 507 F. Supp. 2d at 1336; 544 F.3d at 1293-95.

### CONCLUSION

For all of the foregoing reasons, Defendant's motion to

dismiss this action for lack of subject matter jurisdiction is

GRANTED, and Plaintiff's complaint is hereby DISMISSED.  Judgment

will be entered for Defendant.

It is SO ORDERED.

                                    <u>  /s/ Donald C. Pogue  </u>
                                     Donald C. Pogue, Judge

Dated:     December 16, 2009
           New York, N.Y.

───────────────

[4] The court notes that this case does not present the same
situation as that addressed by the Federal Circuit in <u>United
States v. Utex Int'l Inc.</u>, 857 F.2d 1408 (Fed. Cir. 1988) (surety
not required to file protest and pay full amount of damages in
order to preserve its right to defend on issue of liability for
liquidated damages) because, unlike in <u>Utex</u>, the true nature of
Plaintiff's complaint is a challenge to Customs' charge of unpaid
duties, rather than a defense against liability pursuant to a
liquidated damages clause. <u>See also</u> <u>United States v. Toshoku Am.,
Inc.</u>, 879 F.2d 815, 818 (Fed. Cir. 1989) ("An assessment of
liquidated damages is not a 'charge or exaction' . . . .").

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────┐
│                                      │
│  HARTFORD FIRE INSURANCE COMPANY,    │
│                                      │
│                     Plaintiff,       │
│                                      │
│                - v -                 │
│                                      │
│  UNITED STATES,                      │
│                                      │
│                     Defendant.       │
│                                      │
└─────────────────────────────────────┘
```

Before: Pogue, Judge
Court No. 07-00067

### JUDGMENT

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; now therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that Defendant's motion to dismiss this action for lack of subject matter jurisdiction is GRANTED, and it is further

ORDERED, ADJUDGED and DECREED that this case is DISMISSED.


                                    /s/ Donald C. Pogue
                                   Donald C. Pogue, Judge

Dated:    December 16, 2009
          New York, N.Y.

## NOTICE OF ENTRY AND SERVICE


This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.


Tina Potuto Kimble
Clerk of the Court


Date: _____     By: _____
                                          Deputy Clerk