Slip Op. 12 – 107

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>                Plaintiff,<br><br>        v.<br><br>UNITED STATES,<br><br>                Defendant. | Before: Donald C. Pogue,<br>                Chief Judge<br><br>Court No. 07-00067 |

<u>OPINION</u>

[Granting Defendant's motion to dismiss without prejudice, in part, and with prejudice, in part]

Dated: August 13, 2012

<u>Frederic D. Van Arnam</u>, <u>Eric W. Lander</u>, and <u>Helena D. Sullivan</u>, Barnes, Richardson & Colburn, of New York, NY for the Plaintiff.

<u>Justin R. Miller</u>, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the Defendant.  With him on the briefs were <u>Stuart F. Delery</u>, Acting Assistant Attorney General, <u>Barbara S. Williams</u>, Attorney-in-Charge, International Trade Field Office, and <u>Claudia Burke</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC.  Of counsel on the briefs was <u>Beth C. Brotman</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

**Pogue, Chief Judge**: In its Amended Complaint, ECF No. 29, Plaintiff Hartford Fire Insurance Company ("Hartford") asks the court to void or, in the alternative, to discharge certain bonds securing duties on entries of frozen cooked crawfish tailmeat from the People's Republic of China ("China").  Defendant U.S. Customs and Border Protection ("Customs") moves,

pursuant to Rule 12(b)(5) of this Court, to dismiss Plaintiff's Amended Complaint for failure to state a claim.

As explained below, the first and second causes of action stated in Plaintiff's complaint will be dismissed without prejudice for failure to state a claim; the third and fourth causes of action will be dismissed with prejudice because Plaintiff cannot state a claim for relief on the facts of this case.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (2006).

## BACKGROUND

This action arises from Sunline Business Solution Corporation's ("Sunline") importation into the United States of eight entries of freshwater crawfish tailmeat from Chinese producer Hubei Qianjiang Houho Frozen (the "Hubei entries"), between July 30, 2003, and August 31, 2003. Am. Compl. ¶¶ 2-3. The Hubei entries were subject to an antidumping duty order covering freshwater crawfish tailmeat from China, Am. Compl. ¶ 4, and were permitted to enter following Customs' approval of eight single entry bonds designating Hartford as the surety. Am. Compl. ¶¶ 7-9. The eight single entry bonds, which secured payment of the antidumping duties, were executed on July 27, 2003; August 6, 2003; August 7, 2003; and August 27, 2003. Am. Compl. ¶ 8 &

app. 1.

    Customs liquidated the Hubei entries, in July 2004 and
March 2005, at the 223% country-wide rate for China, pursuant to
the Department of Commerce's final results in the relevant
administrative review. Am. Compl. ¶¶ 10-12.  Following Sunline's
failure to pay the duties owed, Customs made a demand on
Hartford, on June 22, 2005, for payment on the eight single entry
bonds. Am. Compl. ¶ 13.[1]

    Hartford asserts that it learned the following facts,
on which it premises its challenge to the enforcement of the
eight single entry bonds, after receiving the demand for payment
from Customs.  On or around June 19, 2003, Shanghai Taoen
International Trading Co. informed Customs of its belief that
crawfish tailmeat from China was being imported illegally into
the United States. Am. Compl. ¶ 14.  This information led Customs
to investigate Sunline, beginning sometime prior to August 15,
2003. Am. Compl. ¶ 15.  Following the investigation, on November
25, 2003, two of Sunline's officers were indicted for importing
crawfish tailmeat in violation of U.S. import laws. Am. Compl.
¶ 16.  Customs did not, at any time, inform Hartford about its
investigation of Sunline. Am. Compl. ¶¶ 20-24.  Nor did Commerce
inform Hartford that it was returning to Sunline, on August 27,

---

[1] Customs also sought payment from Hartford on a continuous
bond securing the entries, Am. Compl. ¶ 13, but Hartford is not
challenging enforcement of the continuous bond.

2003, and December 19, 2003, cash deposits unrelated to the Hubei
entries. Am. Compl. ¶¶ 25-26.


### STANDARD OF REVIEW

When reviewing a motion to dismiss for failure to state
a claim, the court "must accept as true the complaint's
undisputed factual allegations and should construe them in a
light most favorable to the plaintiff." Bank of Guam v. United
States, 578 F.3d 1318, 1326 (Fed. Cir. 2009) (quoting Cambridge
v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009)).

"To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  To be plausible, the
complaint need not show a probability of plaintiff's success, but
it must evidence more than a mere possibility of a right to
relief. Id. at 678.  "Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not
suffice." Id.


### DISCUSSION

In its Amended Complaint, Hartford alleges four causes
of action, or counts, all of which Customs moves to dismiss for

failure to state a claim.  In counts one and two, Hartford

asserts that the eight single entry bonds are voidable under the

common law theory of material misrepresentation.  In counts three

and four, Hartford claims, in the alternative, that its

obligation on the bonds should be discharged in the amount of

$270,256.92, the value of cash deposits that Customs, without

Hartford's knowledge, returned to Sunline.  The court will first

address Hartford's claims for voidability and then Hartford's

claims for discharge.

I.   Hartford's Amended Complaint Fails to State a Claim for
     Material Misrepresentation

     A.   *Material Misrepresentation by Customs*

          A bond is voidable by a surety, "[i]f the [surety or]

secondary obligor's[2] assent to the [bond] is induced by a

fraudulent or material misrepresentation by the obligee[3] upon

which the [surety or] secondary obligor is justified in relying

. . . ."  Restatement (Third) of Suretyship and Guaranty § 12(1)

(1996).[4]  An obligee's failure to disclose facts unknown to the

---

          [2] An obligor is "[o]ne who binds oneself to another by
contract or legal agreement."  The American Heritage Dictionary of
the English Language 1212 (4th ed. 2000).

          [3] An obligee is "[o]ne to whom another is bound by contract
or legal agreement."  Id.

          [4] "This Court has relied upon suretyship law principles
explained in the Restatement (Third) of Suretyship and Guaranty
in determining the rights and obligations of parties under
customs bonds."  United States v. Great Am. Ins. Co. of N.Y., 35
                                        (footnote continued)

surety is defined as a material misrepresentation if: (1) such

facts "materially increase the risk beyond that which the obligee

has reason to believe the [surety] intends to assume"; (2) the

obligee "has reason to believe that these facts are unknown to

the [surety]"; and (3) the obligee "has a reasonable opportunity

to communicate [these facts] to the [surety]." Id. § 12(3); see

also United States v. Martinez, 151 F.3d 68, 73 (2d Cir. 1998).

    In its first cause of action, Hartford asserts a

material misrepresentation claim against Customs.  In particular,

Hartford claims that (1) Customs failed to disclose to Hartford

the investigation of Sunline; (2) such failure to disclose

materially increased Hartford's risk on the bonds; and (3)

Customs knew or should have known that failure to disclose the

information would cause Hartford to assume a level of risk beyond

that it intended in issuing the bonds. Am. Compl. ¶¶ 34-35.

    Customs argues for dismissal of Hartford's first count

on three grounds: (1) Customs could not have made a timely

disclosure because it did not become aware of the surety's

identity until after the bonds were executed; (2) Hartford failed

to plead its exercise of due diligence and, therefore, cannot

claim justifiable reliance on disclosures from Customs; and (3)

---

⁴(footnote continued)
CIT __, 791 F. Supp. 2d 1337, 1359-60 (2011) (citing Wash. Int'l
Ins. Co. v. United States, 25 CIT 207, 224, 138 F. Supp. 2d 1314,
1330 (2001)).

Customs was prohibited by law from disclosing the Sunline

investigation. Mem. Supp. Def.'s Mot. to Dismiss at 7-18, ECF No.

63 ("Def.'s Mot. to Dismiss").  We consider in turn each of

Customs' arguments.

> 1.   Customs Had a Timely Opportunity to Disclose
>       Material Facts before the Bonds Became Effective

Customs first argues that any lack of disclosure could

not have been a material misrepresentation because the bonds were

executed without its involvement; therefore, there was no

"reasonable opportunity to communicate" with Hartford prior to

the execution of the bonds. Def.'s Mot. to Dismiss at 15.

Customs argues, in essence, that a customs bond is a contract

solely between the importer and the surety, with Customs

functioning as a third party beneficiary. See Restatement (Third)

of Suretyship and Guaranty § 2(d).

Customs' argument is unpersuasive because, pursuant to

its own regulations, bonds must be approved by Customs prior to

entry of the merchandise. 19 C.F.R. § 113.11 (2012) ("The port

director will determine whether the bond is in proper form and

provides adequate security for the transaction(s)."); Antidumping

or Countervailing Duties; Acceptance of Cash Deposits; Bonds, or

Other Security to Obtain Release of Merchandise; Revision of T.D.

82-56, T.D. 85-145, 19 Customs Bull. 331, 332 (1985) ("[T]he U.S.

Customs Service will accept cash deposits, bonds or other

security, as specified below, prior to releasing for consumption

in the customs territory of the United States merchandise that is or may be subject to the assessment of antidumping or countervailing duties . . . .").  Without Customs' approval of the bond, merchandise does not enter the United States, no duty is assessed, and no obligation exists for the surety to assume upon default.

Thus, Customs' acceptance of the surety's offer is necessary to the formation of the surety agreement. <u>See</u> Restatement (Third) of Suretyship and Guarantee § 8 cmt. a ("An offer to become a secondary obligor commonly invites the offeree to accept by advancing money, goods, or services on credit."). Because Customs' approval functions as an acceptance necessary to formation of the contract, Customs would have the opportunity at any point prior to approval of the bond to inform the surety of material facts.[5]  For this reason, Customs may have had an opportunity to disclose information to Hartford prior to approving the bond, and dismissal is not warranted on this ground.

---

[5] Customs argues in its Reply Brief that formation of the bond contract occurs prior to entry of merchandise because 19 C.F.R. § 113.26(b) makes the effective date of the bond the date of the transaction, as listed on Customs Form 301. Def.'s Reply Mem. Supp. Mot. to Dismiss at 11, ECF No. 85 ("Def.'s Reply Br.").  However, the effective date of the bond instrument is not the same as formation.  The effective date tells Customs that a bond offer is outstanding and invites Customs acceptance by entering the goods, thereby creating the obligation that is the subject matter of the bond.

       2.    Hartford's Failure to Plead Due Diligence Does Not
            Undermine Its Material Misrepresentation Claim

In its second argument for dismissing the first cause of action, Customs argues that Hartford has failed to plead exercise of due diligence in issuing the bonds to Sunline. Customs contends that because Hartford has not pled any facts relating to its due diligence, it cannot claim that Customs had reason to believe Hartford was unaware of the relevant facts relating to the investigation of Sunline.

The Restatement notes that "[f]or purposes of subsection (3), whether the obligee has reason to believe that . . . such facts are unknown to the secondary obligor, shall be determined in light of the obligee's reasonable beliefs as to . . . the secondary obligor's ability to obtain knowledge of such facts independently in the exercise of ordinary care." Restatement (Third) of Suretyship and Guaranty § 12(4). Furthermore, "the surety bears the burden of making inquiries and informing itself of the relevant state of affairs of the party for whose conduct it has assumed responsibility," Cam-Ful Indus., Inc. v. Fid. & Deposit Co. of Md., 922 F.2d 156, 162 (2d Cir. 1991) (quoting State v. Peerless Ins. Co., 492 N.E.2d 779, 780 (N.Y. 1986)), and "[t]he policy behind surety bonds is not to protect a surety from its own laziness or poorly considered decision," id.

However, considering the facts pled in the light most

favorable to the plaintiff, Bank of Guam, 578 F.3d at 1326,

Hartford's claim that it was unaware of the investigation and

that Customs should have known it was unaware is plausible.  In

this case, Hartford has pled — and Customs has not disputed —

that the investigation of Sunline was confidential.  Taken in the

light most favorable to Hartford, the confidential nature of the

investigation suggests both that Hartford was unaware of the

investigation and that Customs had reason to know that the

investigation was unknown to Hartford.  Thus, Hartford's pleading

on this issue is plausible and dismissal is not warranted on this

ground.[6]

> 3.   Hartford's Right to Disclosure of the Sunline
>       Investigation under a Material Misrepresentation
>       Theory is Preempted by Statute

In its final argument in favor of dismissing the first

cause of action, Customs contends that it was prohibited by law

from revealing the existence of the Sunline investigation to

Hartford.  To support its contention, Customs cites case law

concerning both the Freedom of Information Act ("FOIA") and the

law enforcement investigatory privilege. Def.'s Mot. to Dismiss

at 9-12.  Hartford responds that neither FOIA, nor the law

enforcement investigatory privilege, can be used as a shield in

---

[6] The court does not determine whether Hartford exercised
due diligence in issuing the single entry bonds to Sunline.  The
court's finding is limited to the narrow question of whether the
facts as pled state a plausible claim for relief.

this case.  Pl.'s Resp. to Def.'s Mot. to Dismiss at 14-18, ECF

No. 70 ("Pl.'s Resp. Br.").

    If Customs is prohibited from disclosing the

investigation or permitted to withhold the relevant information,

then dismissal may be appropriate.  If Customs' disclosure is

prohibited by law, then a material misrepresentation claim

premised on such a disclosure would be foreclosed as a matter of

law because Custom's would have no reasonable opportunity to

communicate material facts. Restatement (Third) of Suretyship and

Guaranty § 12(3)(c).  Furthermore, if Custom's had a right to

withhold relevant information, which preempts Hartford's right to

disclosure under the common law, then there would be no cause of

action for material misrepresentation.  Accordingly, we will

consider first the law enforcement investigatory privilege and

then FOIA.

    Hartford is correct that the law enforcement

investigatory privilege is inapplicable in this case.  The law

enforcement investigatory privilege is a judge-made evidentiary

privilege that permits the government to withhold certain

evidence related to law enforcement investigations from

discovery. See Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d

1122, 1125 (7th Cir. 1997).  Permitting the government to

exercise this privilege is within the sound discretion of the

trial court.  Id. ("The balancing of that need — the need of the

litigant who is seeking privileged investigative materials —

against the harm to the government if the privilege is lifted is

a particularistic and judgmental task."). As a discretionary,

judge-fashioned, evidentiary privilege, the law enforcement

investigatory privilege has, at best, limited application outside

the realm of discovery. In a case such as this, Customs cannot

shield itself with a privilege so limited in scope, particularly

when the exercise of the privilege is not Customs' prerogative

but the special province of the court.

On the other hand, Hartford is mistaken when it argues

that FOIA is inapplicable to this case. FOIA is a comprehensive

statute governing the rules of agency disclosure; therefore, as

this case centers on Customs' obligation to disclose, FOIA cannot

be avoided. See 5 U.S.C. § 552 (2006); see also Ctr. for Nat'l

Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 936-37 (D.C.

Cir. 2003) (holding the common law right of access to public

records preempted by FOIA).

FOIA establishes a three-part disclosure requirement

for all federal agencies: § 552(a)(1)[7] requires federal agencies

---

[7] 19 U.S.C. § 552(a)(1) reads:

Each agency shall separately state and currently
publish in the Federal Register for the guidance of the
public —
        (A) descriptions of its central and field
        organization and the established places at which,
        the employees (and in the case of a uniformed
                                        (footnote continued)

to proactively disclose certain information through publication

in the Federal Register; § 552(a)(2)[8] requires federal agencies

---

[7](footnote continued)
    service, the members) from whom, and the methods
    whereby, the public may obtain information, make
    submittals or requests, or obtain decisions;
    (B) statements of the general course and method by
    which its functions are channeled and determined,
    including the nature and requirements of all
    formal and informal procedures available;
    (C) rules of procedure, descriptions of forms
    available or the places at which forms may be
    obtained, and instructions as to the scope and
    contents of all papers, reports, or examinations;
    (D) substantive rules of general applicability
    adopted as authorized by law, and statements of
    general policy or interpretations of general
    applicability formulated and adopted by the
    agency; and
    (E) each amendment, revision, or repeal of the
    foregoing.

[8] 19 U.S.C. § 552(a)(2) reads:

Each agency, in accordance with published rules, shall
make available for public inspection and copying —
    (A) final opinions, including concurring and
    dissenting opinions, as well as orders, made in
    the adjudication of cases;
    (B) those statements of policy and interpretations
    which have been adopted by the agency and are not
    published in the Federal Register;
    (C) administrative staff manuals and instructions
    to staff that affect a member of the public;
    (D) copies of all records, regardless of form or
    format, which have been released to any person
    under paragraph (3) and which, because of the
    nature of their subject matter, the agency
    determines have become or are likely to become the
    subject of subsequent requests for substantially
    the same records; and
    (E) a general index of the records referred to
    under subparagraph (D);
unless the materials are promptly published and copies
                                        (footnote continued)

to make certain information available for public inspection and copying; and § 552(a)(3)[9] requires federal agencies to disclose all records not covered under § 552(a)(1) & (2) upon request. FOIA also sets out exemptions in § 552(b) that are applicable to all disclosures made pursuant to § 552(a).  Particularly relevant in this case is the § 552(b)(7)(A) exemption for "records or information compiled for law enforcement purposes . . . [that] could reasonably be expected to interfere with enforcement proceedings," and the § 552(c)(1)[10] limitations on when an investigation qualifies for a § 552(b)(7)(A) exemption.

---

[8](footnote continued)
offered for sale.

[9] 5 U.S.C. § 552(a)(3)(A) reads:

Except with respect to the records made available under paragraphs (1) and (2) of this subsection, and except as provided in subparagraph (E), each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person.

[10] 5 U.S.C. § 552(c)(1) reads:

Whenever a request is made which involves access to records described in subsection (b)(7)(A) and (A) the investigation or proceeding involves a possible violation of criminal law; and (B) there is reason to believe that (i) the subject of the investigation or proceeding is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings, the agency may, during only such time as that circumstance continues, treat the records as not subject to the requirements of this section.

Thus, the FOIA disclosure scheme is comprehensive: a limited category of records must be proactively disclosed; a second, limited category of records must be available for public inspection; and *all other records* are to be available upon request unless exempted from disclosure.  Furthermore, all exemptions to the disclosure regime are statutorily enumerated.

Because FOIA establishes a comprehensive statutory framework for disclosure of agency records, when it conflicts with existing common law rights to disclosure, such rights are preempted. See Ctr. for Nat'l Sec. Studies, 331 F.3d at 936–37. In Center for National Security Studies, plaintiffs argued that a common law right of access to public records required the Department of Justice to disclose the names of detainees arrested in the wake of the September 11th attacks and their attorneys. Id. at 936.  The Court of Appeals for the District of Columbia Circuit acknowledged that the Supreme Court had recognized a common law right of access to public records. Id. (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)).  However, as early as Nixon, the Supreme Court also recognized that the common law right could be abrogated by statute. Nixon, 435 U.S. at 602–06.  Thus, the D.C. Circuit concluded that with FOIA "Congress has provided a carefully calibrated statutory scheme, balancing the benefits and harms of disclosure.  That scheme preempts any preexisting common law right." Ctr. for Nat'l Sec.

Studies, 331 F.3d at 937; see also United States v. El-Sayegh,

131 F.3d 158, 163 (D.C. Cir. 1997) ("The appropriate device [for

access to the record] is a Freedom of Information Act request

addressed to the relevant agency.").

     The D.C. Circuit's decision in Center for National

Security Studies instructs our analysis here.  Hartford is

invoking a common law right to disclosure through its material

misrepresentation claim.  Though it is not the same common law

right of access that the D.C. Circuit discussed in Center for

National Security Studies, for its claim to stand, Hartford must

have a right to disclosure of the information.  But, insofar as

Hartford seeks disclosure of Customs' law enforcement

investigation of Sunline, its common law right is preempted by

FOIA.

     As a law enforcement investigation, the Customs

investigation of Sunline is decidedly within the purview of FOIA.

As the D.C. Circuit noted in Center for National Security

Studies, "[i]n enacting the [5 U.S.C. § 552(b)(7)(A)] exemption,

'Congress recognized that law enforcement agencies had legitimate

needs to keep certain records confidential, lest the agencies be

hindered in their investigations.'" 331 F.3d at 926 (quoting NLRB

v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978)).  As

Customs was investigating Sunline for violation of U.S. import

laws, any record of the investigation falls squarely within the

§ 552(a)(3) provision for disclosure upon request and is

potentially barred from disclosure by § 552(b)(7)(A).[11]

       Furthermore, with regard to law enforcement

investigations, FOIA creates a presumption of confidentiality,

thereby foreclosing prior common law disclosure obligations.

FOIA presumes that an agency may withhold information about a law

enforcement investigation unless and until a request for

disclosure is made and such request is determined not to fall

within the § 552(b)(7)(A) exception.  Therefore, it cannot

coexist with the common law's obligation to affirmatively

disclose material facts, insofar as material facts include

information regarding law enforcement investigations.  Where a

statute conflicts with the common law, the statute controls. See

City of Milwaukee v. Ill. and Mich., 451 U.S. 304, 314 (1981)

("Federal common law is a 'necessary expedient,' and when

Congress addresses a question previously governed by a decision

rested on federal common law the need for such an unusual

exercise of lawmaking by federal courts disappears." (citation

omitted)).

---

    [11] The court is not in a position to decide if Customs must
disclose the investigation of Sunline pursuant to § 552(a)(3) or
whether the investigation would be excepted from disclosure under
§ 552(b)(7)(A).  It is irrelevant in this case because no request
was ever made.  In order for Hartford's claim to succeed, Customs
must have had an obligation to disclose the investigation — which
Hartford claims Customs had under a theory of material
misrepresentation — but any such obligation, on the facts of this
case, is preempted by the disclosure requirements of FOIA.

        This does not mean that sureties are foreclosed from

bringing all material misrepresentation claims against the

government due to the disclosure rules of FOIA.  Rather, our

holding is limited to the facts pled in this case.  Here, the

disclosure sought by Hartford — the existence of a law

enforcement investigation — is one clearly contemplated under the

statutory structure of FOIA, reserved to the request procedures

of § 552(a)(3), and possibly subject to exception pursuant to

§ 552(b)(7)(A).[12]  Therefore, any common law right Hartford may

have to disclosure of Custom's law enforcement investigation

under the theory of material misrepresentation is preempted by

FOIA.  The court makes no decision regarding material

misrepresentation claims premised on other facts.

_____

        [12] In this regard, the Court of Appeals for the Fifth
Circuit's decision in St. Paul Fire and Marine Insurance Co. v.
Commodity Credit Corp., 646 F.2d 1064 (5th Cir. 1981), is
distinguishable from the facts of this case.  St. Paul Fire and
Marine concerned bonds issued by the plaintiffs as assurance on a
line of credit given by the Community Credit Corporation ("CCC"),
a federal government agency, to the United Farmer's Marketing
Association ("UFMA").  Id. at 1066-67.  One of the bonds, issued
in January 1964, followed a shortage of funds by UFMA in December
1963 that was known to CCC but not to the sureties.  Id.
at 1068-70.  The Fifth Circuit held that the plaintiffs were
released from liability on the January 1964 bond because CCC knew
of the December 1963 shortage by UFMA and did not inform
plaintiffs prior to issuance of the 1964 bond.  Id. at 1074-75.
While the Fifth Circuit released plaintiffs from liability on a
material misrepresentation theory, unlike in this case the
material fact to be disclosed was not the existence of a law
enforcement investigation; therefore, the facts in St. Paul Fire
and Marine do not raise the same FOIA preemption issues that are
relevant in this case.

In lieu of disclosing the investigation itself, Hartford argues that Customs could have met its common law obligation to avoid material misrepresentation by rejecting the bonds and requiring cash deposits from Sunline for the Hubei entries.  Hartford's theory rests on Customs' discretionary capacity to accept a cash deposit in lieu of a bond. See 19 C.F.R. § 113.40(a) (2012) ("In lieu of sureties on any bond required or authorized by any law, regulation, or instruction . . . the port director is authorized to accept United States money, United States bonds (except for savings bonds), United States certificates of indebtedness, Treasury notes, or Treasury bills in an amount equal to the amount of the bond."); see also Section 623(e) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1623(e) (2006).[13]

However, Hartford has failed to adequately plead this alternative theory.  When reviewing agency action pursuant to its 28 U.S.C. § 1581(i) jurisdiction, the court will "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (2006); see Gilda Indus., Inc. v. United States, 622 F.3d 1358, 1363 (Fed. Cir. 2010); Candle Artisans v. U.S. Int'l Trade Comm'n, 29

---

[13] All subsequent citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, 2006 edition.

CIT 145, 149, 362 F. Supp. 2d 1352, 1355 (2005).  As the action

Hartford wishes to challenge — the decision to accept the bond

rather than a cash deposit — is a discretionary decision by the

agency,[14] Hartford must show, at a minimum, that such decision

was an abuse of discretion.  Therefore, in order to survive a

motion to dismiss for failure to state a claim, Hartford must

plead a plausible allegation that Customs' decision was an abuse

of discretion.

        Because Hartford has not pled a plausible claim for

abuse of discretion, the first cause of action cannot be

sustained on the basis of Hartford's alternative theory.

However, when appropriate, a dismissal pursuant to Rule 12(b)(5)

will be made without prejudice, thereby permitting the plaintiff

to file an amended complaint. See Totes-Isotoner Corp. v. United

States, 32 CIT 739, 750-51, 569 F. Supp. 2d 1315, 1328 (2008).

Therefore, the first cause of action is dismissed without

prejudice.   If Plaintiff's complaint is not so amended within

thirty (30) days of this opinion, the dismissal will become

final.

---

        [14] Actions "committed to agency discretion by law" are
beyond the scope of judicial review under the Administrative
Procedures Act. 5 U.S.C. § 701(a)(2) (2006); Citizens to Pres.
Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971).  The court
does not decide whether the action challenged here does or does
not fall within the purview of 5 U.S.C. § 701(a)(2).

B.   *Material Misrepresentation by Sunline*

In its second cause of action, Hartford asserts fraudulent and material misrepresentation by Sunline.  According to the Restatement (Third) of Suretyship and Guaranty § 12(2):

> If the [surety's] assent to the secondary obligation is induced by a fraudulent or material misrepresentation by either the principal obligor or a third person upon which the secondary obligor is justified in relying, the secondary obligation is voidable by the secondary obligor unless the obligee, in good faith and without reason to know of the misrepresentation, gives value or relies materially on the secondary obligation.

However, Hartford has failed to plead facts sufficient to render plausible a claim of fraudulent or material misrepresentation by Sunline. Iqbal, 556 U.S. at 678.  In the Amended Complaint, Hartford asserts only that "[t]hrough means of fraudulent and material misrepresentation, Sunline induced Hartford . . . to issue the single entry bonds covering the Hubei entries." Am. Compl. ¶ 44.  Such a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

As in a recent case before the Court of Appeals for the Federal Circuit, in this case Hartford has asserted a troubling result but no particular facts to explain why that result occurred. Cf. Sioux Honey Ass'n. v. Hartford Fire Ins. Co., 672 F.3d 1041, 1062-64 (Fed. Cir. 2012).  In Sioux Honey, the plaintiff claimed that Customs failed to take statutory and regulatory actions resulting in uncollected duties. Id. at 1063.

The complaint contained a factual allegation that Commerce had
not collected $723 million in duties under the four challenged
antidumping orders, but "contain[ed] no facts indicating that the
conduct alleged . . . actually occurred and caused the duties to
be uncollected and undistributed." Id.  The Court of Appeals
found that this conclusory allegation — $723 million in
uncollected duties must mean Customs had failed to fulfill its
obligations — was possible but fell short of the Twombly
requirement of plausibility, because plausibility requires the
plaintiff to plead some specific facts that draw a connection
between the alleged wrongdoing and the harm. Id. at 1063–64 ("In
providing so few facts in support of their allegations,
Plaintiffs have done nothing to separate the conduct alleged
. . . from a whole host of other possible alternatives.").

Similarly, Hartford's statement that it was unaware of
any investigation or fraudulent behavior by Sunline, though
possible, is not enough to support a plausible claim of
fraudulent or material misrepresentation.  Without pleading any
facts regarding the relationship or negotiations between Sunline
and Hartford, Hartford has failed to make a plausible case that
its ignorance was Sunline's responsibility, let alone due to
behavior amounting to fraudulent or material misrepresentation.
However, as with the first cause of action, dismissal is without
prejudice, and Hartford may amend the complaint.  Again, if

Plaintiff's complaint is not so amended within thirty (30) days of this opinion, the dismissal will become final.

II.   Hartford Cannot State a Claim for Impairment of Suretyship or Equitable Subrogation on the Facts of this Case

     A.   *Impairment of Suretyship/*Pro Tanto *Discharge*

          Hartford's third cause of action is for impairment of suretyship or *pro tanto* discharge.  The Restatement describes impairment of suretyship as "[a]n act that increases the secondary obligor's risk of loss by increasing its potential cost of performance or decreasing its potential ability to cause the principal obligor to bear the cost of performance . . . ."  Restatement (Third) of Suretyship and Guaranty § 37(1).  When an impairment of suretyship occurs, the surety may be discharged from its obligation in an amount equal to the loss suffered by the surety.  Id. § 37 cmt. f.  Hartford argues that by returning cash deposits totaling $270,256.92 to Sunline, Customs impaired collateral that Hartford could have applied to the debt owed on the bonds.

          Hartford's claim is barred by sovereign immunity. Claims against the United States may be barred by sovereign immunity unless there exists "a clear statement from the United States waiving sovereign immunity . . . together with a claim falling within the terms of the waiver." Dolan v. U.S. Postal Serv., 546 U.S. 481, 498 (2006) (quoting United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) (internal

quotation marks omitted)).

In Lumbermens Mutual Casualty Co. v. United States, 654
F.3d 1305 (Fed. Cir. 2011), the Court of Appeals for the Federal
Circuit held that the government had not waived sovereign
immunity for implied-in-law contract claims such as impairment of
suretyship.  In Lumbermens, the plaintiff brought an impairment
of suretyship claim in the Court of Federal Claims pursuant to
the Tucker Act, 28 U.S.C. § 1491. Id. at 1307.  The Court of
Appeals recognized that, while impairment of suretyship
originated as a defense, state law had evolved to accommodate
such an affirmative cause of action, which "stems not from an
equitable assignment of rights (like equitable subrogation), but
rather is based on an implied-in-law contract theory – i.e., a
recovery in the nature of quantum meruit or quantum valebant."
Id. at 1314–15.  Although the Tucker Act addresses "'implied
contract[s],' the Supreme Court has long held that the scope of
the Tucker Act's waiver of sovereign immunity 'extends only to
contracts either express or implied in fact, and not to claims on
contracts implied in law.'" Id. at 1316 (quoting Hercules Inc. v.
United States, 516 U.S. 417, 423 (1996)).  Since impairment of
suretyship was determined to be an implied-in-law contract claim,
the Court of Appeals held that the Court of Federal Claims lacked
subject matter jurisdiction over that claim.  Id. at 1317 ("Thus,
because Lumbermens' impairment of suretyship/pro tanto discharge

claim is based on a noncontractual state law cause of action, or at most an implied-in-law contract theory, we hold that the Claims Court lacked jurisdiction to consider Lumbermens' claim.").

Hartford argues that limitations on the waiver of sovereign immunity under either the Tucker Act or the Administrative Procedures Act ("APA")[15] are inapplicable here because 28 U.S.C. § 1581 effectuates its own waiver of sovereign immunity.  See Humane Soc'y of the U.S. v. Clinton, 236 F.3d 1320, 1328 (Fed. Cir. 2001) (concluding that "§ 1581 not only states the jurisdictional grant to the Court of International Trade, but also provides a waiver of sovereign immunity over the specified classes of cases").  While Hartford is correct that the applicable waiver of sovereign immunity is to be found in 28 U.S.C. § 1581, the court is hard pressed to find that § 1581 waives affirmative suits for impairment of suretyship.

As the Court of Appeals noted in Humane Society, § 1581 waives sovereign immunity "over the specified classes of cases" contained therein.  Id.  The Court of Appeals has held that this court has jurisdiction in this case pursuant to 28 U.S.C. § 1581(i), Hartford Fire Ins. v. United States, 648 F.3d 1371

---

[15] Customs argues that the waiver of sovereign immunity in a 28 U.S.C. § 1581(i) case is found in the APA, and that the limited waiver of sovereign immunity in the APA cannot be read to waive sovereign immunity in this case. Def.'s Mot. to Dismiss at 21-22.

(Fed. Cir. 2011), but this is not the same as holding that
sovereign immunity has been waived for all claims asserted.[16]
Rather, Hartford is now arguing that 28 U.S.C. § 1581, which
grants jurisdiction and waives sovereign immunity for suits
brought pursuant to the tariff and trade laws, waives sovereign
immunity for a state common law claim sounding in contract that
is not waived by the Tucker Act.

Construing the § 1581 waiver of sovereign immunity
strictly in favor of the United States, United States v. Idaho ex
rel. Director, Idaho Dep't of Water Res., 508 U.S. 1, 6-7 (1993)
(quoting Ardestani v. INS, 502 U.S. 129, 137 (1991)), § 1581
should not be read to waive sovereign immunity for a claim that
is barred in other contexts.  This is particularly true where, as
here, an impairment of suretyship claim is not one specifically
contemplated under the trade laws and, therefore, under § 1581.
A claim for impairment of suretyship is more at home in the
context of the Tucker Act — where Congress waived sovereign
immunity for contract suits against the federal government — but
the Court of Appeals has held that affirmative impairment of
suretyship claims are specifically excluded from that waiver.  To
permit such a claim under § 1581 would be an overbroad reading of
the § 1581 waiver of sovereign immunity, and the courts "should

_____

[16] Nor was the question of sovereign immunity before the
Court of Appeals when it decided the jurisdictional question in
this case.

not take it upon ourselves to extend the waiver beyond that which
Congress intended." Smith v. United States, 507 U.S. 197, 203
(1993) (quoting United States v. Kubrick, 444 U.S. 111, 117-18
(1979)).  Therefore, the impairment of suretyship claim must be
dismissed.[17]

    *B.   Equitable Subrogation or Setoff*

       In its final cause of action, Hartford asserts that any
liability it owes on the bonds should be offset by the amount of
the cash deposits returned to Sunline.  Customs styles this claim
as one for common law equitable subrogation, while Hartford in
its response brief portrays the claim as one for setoff pursuant
to 19 C.F.R. § 24.72 (2012).

       However styled, Hartford's claim must fail because it
can neither setoff nor subrogate funds that are no longer in the
possession of Customs.  Wash. Int'l Ins. Co. v. United States, 25
CIT 207, 227, 138 F. Supp. 2d 1314, 1333 (2001) ("In order for
the court to compel setoff, Customs must be *in possession of*
*excess cash deposits* or other form of collateral posted by the
insolvent principal.").  Customs no longer possesses any money
owed to Sunline because the cash deposits in question were
returned.

       Implicitly recognizing this fact, Hartford argues that

---

[17] The court does not reach the issue of whether Hartford
may raise impairment of suretyship as a defense to a collection
action instituted by Customs for recovery on the bonds.

it should receive a setoff because Customs did not timely inform
Hartford either that Sunline was a bad credit risk or that
Customs was returning the cash deposits.  However, this line of
argument is not a claim for equitable subrogation or setoff; it
is a reiteration of Hartford's claim for impairment of
suretyship.  As discussed above, an affirmative claim for
impairment of suretyship must be dismissed as barred by sovereign
immunity but may remain open to Hartford as a defense to the
enforcement action on the bond.

**CONCLUSION**

In light of the foregoing analysis, and consistent with
this opinion: the first and second causes of action are dismissed
without prejudice, and the third and fourth causes of action are
dismissed with prejudice.

Plaintiff has until September 12, 2012 to submit an
amended complaint.  If Plaintiff's complaint is not amended by
that date, the court will enter a final judgment of dismissal.

It is **SO ORDERED**.


                                    /s/ Donald C. Pogue
                                Donald C. Pogue, Chief Judge

Dated: August 13, 2012
       New York, New York