Slip Op. 13 - 84

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>   Plaintiffs,<br><br>    v.<br><br>UNITED STATES<br><br>   Defendant. | Before: Donald C. Pogue,<br>    Chief Judge<br><br>Court No. 07-00067 |

## OPINION

[Defendant's motion to dismiss for failure to state a claim is GRANTED]

Dated: June 27, 2013

   Frederic D. Van Arnam, Jr., Eric W. Lander, and Helena D. Sullivan, Barnes, Richardson & Colburn, of New York, NY for the Plaintiff.

   Justin R. Miller, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for the Defendant.  With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, and Barbara S. Williams, Attorney-in-Charge, International Trade Field Office.  Of counsel on the briefs was Beth C. Brotman, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

   **Pogue, Chief Judge:**  In this action, Plaintiff Hartford Fire Insurance Company ("Hartford") seeks to void certain bonds securing entries of frozen cooked crawfish tailmeat from the People's Republic of China ("China").  In its Second Amended Complaint, ECF No. 88, Hartford alleges as its

single cause of action that the Defendant, United States Customs
and Border Protection ("Customs"), abused its discretion by
either failing to require a cash deposit in lieu of a bond for
the entries in question or rejecting the entries altogether.
Customs moves, pursuant to USCIT Rule 12(b)(5), to dismiss the
Second Amended Complaint for failure to state a claim.  For the
reasons explained below, Customs' motion to dismiss is GRANTED.


## BACKGROUND[1]

This action arises from Sunline Business Solution
Corporation's ("Sunline") importation into the United States of
eight entries of freshwater crawfish tailmeat, between July 30,
2003, and August 31, 2003 (the "Hubei entries"). Second Am.
Compl., ECF No. 88 at ¶¶ 2-3.  The entries were from Chinese
producer Hubei Qianjiang Houho Frozen.   The Hubei entries were
subject to an antidumping ("AD") duty order covering freshwater
crawfish tailmeat from China, Second Am. Compl. ¶ 4, and were
entered following Customs' approval of eight single entry bonds
designating Hartford as the surety. Second Am. Compl. ¶¶ 7-9.
Customs liquidated the Hubei entries at the 223% country-wide AD
rate for China, and, following Sunline's failure to pay the

---

[1] The facts of this case were summarized in the court's
prior opinion, Hartford Fire Ins. Co. v. United States, __ CIT
__, 857 F. Supp. 2d 1356 (2012) ("Hartford I").  Familiarity
with that opinion is presumed, and only those facts necessary to
the disposition are reiterated here.

duties owed, Customs made a demand for payment on Hartford.
Second Am. Compl. ¶¶ 12-13.

Hartford did not pay the demand and, instead, filed
its orginal complaint in this action alleging that the bonds
were voidable.  According to Hartford, the bonds were voidable
because Customs was investigating Sunline for possible violation
of the import laws during the period in which the bonds were
secured and the Hubei entries were entered, and Customs did not,
at any time, inform Hartford about its investigation of Sunline.
Second Am. Compl. ¶¶ 20-24.

Hartford's First Amended Complaint, ECF No. 29,
alleged four causes of action: (1) material misrepresentation by
Customs; (2) material misrepresentation by the importer; (3)
impairment of suretyship; and (4) equitable subrogation or
setoff.  Customs moved to dismiss the First Amended Complaint in
its entirety. Def.'s Mot. to Dismiss for Failure to State a
Claim Upon Which Relief Can Be Granted, ECF No. 63.

The court granted Customs' Motion to Dismiss in
Hartford I, holding that (1) the claim of material
misrepresentation by Customs, premised on Customs failure to
inform Hartford of a confidential investigation pending at the
time the bonds in question were issued, was pre-empted by the
Freedom of Information Act; (2) the claim of material
misrepresentation by the importer did not contain sufficient

facts to make the claim plausible; (3) the impairment of

suretyship claim was barred on sovereign immunity grounds; and

(4) the equitable subrogation or setoff claim failed because

Customs possessed no funds to which Hartford could stake an

equitable claim.  See generally Hartford Fire I, __ CIT __, 857

F. Supp. 2d 1356.  The court dismissed the third and fourth

causes of action with prejudice but permitted Hartford to amend

its complaint to plead an alternative theory that Customs abused

its discretion when it did not require the importer to post a

cash deposit in lieu of a bond or reject the entries and to

plead sufficient facts to make this claim of material

misrepresentation plausible.  Id.

        In its Second Amended Complaint, Hartford alleges only

this latter, remaining theory.  It claims that given the

existence of the Sunline investigation, Customs abused its

discretion by accepting the bonds on the Hubei entries.

Hartford alleges that due to the ongoing status of the

investigation into Sunline, Customs had the discretion to and

should have insisted on cash deposits in lieu of bonds, required

additional security, or rejected the Hubei entries altogether.

Hartford further alleges that because of the confidential nature

of Customs' investigation, Customs should have known that

Hartford was not aware of the existence of an investigation and

therefore unreasonably increased Hartford's risk when it approved the Hubei bonds.  Second Am. Compl. ¶¶ 50-52.

The court has jurisdiction pursuant to 28 U.S.C. § 1581(i).

## STANDARD OF REVIEW

When reviewing an agency decision for abuse of discretion, the court examines whether the decision "1) is clearly unreasonable, arbitrary, or fanciful; 2) is based on an erroneous conclusion of law; 3) rests on clearly erroneous fact findings; or 4) follows from a record that contains no evidence on which the [agency] could rationally base its decision." Sterling Fed. Sys., Inc. v. Goldin, 16 F.3d 1177, 1182 (Fed. Cir. 1994) (quoting Gerritsen v. Shirai, 979 F.2d 1524, 1529 (Fed. Cir. 1992)); see also Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1147-48 (Fed. Cir. 2011) (noting that a clear error of judgment occurs when an action is "arbitrary, fanciful, or clearly unreasonable").

When deciding a motion to dismiss for failure to state a claim, the court "must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to the plaintiff." Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir. 2009) (quoting Cambridge v. United States, 558 F.3d 1331, 1335 (Fed. Cir. 2009)).

"To survive a motion to dismiss, a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  To be plausible, the
complaint need not show a probability of plaintiff's success,
but it must evidence more than a mere possibility of a right to
relief. Id. at 678.  "Threadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do not
suffice." Id.

## DISCUSSION

Customs contends that under the prevailing scheme, it
could not abuse its discretion because it had none.  Citing the
statute that was in effect when Hartford issued the Hubei bonds,
19 U.S.C. § 1675(a)(2)(B)(iii), Customs asserts that it had no
authority to override a new shipper's decision to submit bonds
rather than cash deposits, and therefore there was no discretion
to abuse.

According to 19 U.S.C. § 1675(a)(2)(B)(iii), when a
new shipper such as Hubei[2] was being reviewed,

_____

[2] Hartford does not contest that Hubei was a new shipper.
Mem. Of Law in Supp. Of Def.'s Mot. to Dismiss for Failure to
State a Claim Upon Which Relief Can Be Granted, ECF No. 93 at 7
("Def.'s Mot.").

> The administering authority shall . . .
> direct the Customs Service to allow, at the
> option of the importer, the posting . . . of
> a bond or security in lieu of a cash deposit
> for each entry of the subject merchandise.

19 U.S.C. § 1675(a)(2)(B)(iii).[3]  Customs correctly argues that

given the statutory framework in effect at the time of Hubei's

entries, it had no option to demand a cash deposit in lieu of

the bonds issued by Hartford.  Therefore, because Customs had no

discretion, there is no abuse of discretion in Customs failure

to have insisted on cash deposits rather than bonds.

Plaintiff concedes that the new shipper bonding

privilege is an option that the shipper may elect.  See Pl.'s

Resp. to Def.'s Mot. Dismiss for Failure to State a Claim Upon

Which Relief Can be Granted, ECF No. 101 at 7 ("Pl.'s Br.").

However, it contends that 19 U.S.C. § 1623(a) empowers Customs

to require additional security when circumstances establish that

a bond is insufficient.  19 U.S.C. § 1623(a) states that when

> [a] bond or other security is not
> specifically required by law, the Secretary
> of the Treasury may by regulation or
> specific instruction require, or authorize
> customs officers to require, such bonds or
> other security as he, or they, may deem
> necessary for the protection of the revenue
> or to assure compliance with any provision
> of law, regulation, or instruction,

---

[3] Congress suspended the option of bonds for new shippers
and required cash deposits between April 1, 2006 and June 30,
2009.

19 U.S.C. § 1623(a).  Hartford relies extensively on <u>National</u>

<u>Fisheries Institute, Inc. v. United States</u>, __ CIT __, 637 F.

Supp. 2d 1270 (2009), for the proposition that Customs had the

discretion to require additional bonding in addition to the new

shipper bonding rate.[4]  The <u>National Fisheries</u> court discussed 19

U.S.C. § 1623(a) when determining that Customs acted

unreasonably in applying an enhanced bonding requirement for

shrimp importers and noted that § 1623(a) might be read to grant

Customs discretion to collect additional antidumping duties.

<u>National Fisheries</u>, __ CIT __, 637 F. Supp. 2d at 1287-91.

However, because the statute is ambiguous, 19 U.S.C. § 1623(a)

could easily be interpreted as merely granting Customs broad

authority to require some form of security from an importer —

security which had been provided here --  rather than

contemplating additional security.  Here Customs appears to have

adopted the more restrictive interpretation.  <u>See</u>, <u>e.g.</u>, <u>Sioux</u>

<u>Honey Ass'n v. Hartford Fire Ins. Co.</u>, __ CIT __, 700 F. Supp.

2d 1330, 1347 (2010) (discussing how 19 U.S.C. § 1623(a) should

be read in conjunction with 19 U.S.C. § 1675(a)(2)(B)(iii))

(aff'd in part, vacated in part on other grounds 672 F.3d 1041,

<u>cert. denied</u>, 133 S.Ct. 126 (2012)); <u>see also</u> <u>Chevron USA v.</u>

---

[4] Additionally, Hartford argues that § 1623 grants Customs
the authority to override a new shipper's bond option under 19
U.S.C. § 1675(a)(2)(B)(iii).  Given that the statutory scheme in
force when the Hubei bonds were issued clearly granted the bond
option to a new shipper, this argument fails.

Nat'l Res. Def. Council, 467 U.S. 837 (1984) (holding that an
agency's reasonable reading of an ambiguous statute must be
affirmed). The National Fisheries court ultimately concluded –
and this court agrees - that the real issue is not how to
interpret 19 U.S.C. § 1623(a), but whether Customs "acted in
accordance with law" when making its determination. Id. at
1291. Here Customs interpretation cannot constitute an
erroneous conclusion of law and therefore cannot be the basis
for an allegation of abuse of discretion.

       Rather, Customs correctly notes that it was in full
compliance with the governing statues and regulations when it
accepted the bonds. It argues that its acceptance of the
Sunline bonds was in accordance with the requirements laid out
in 19 U.S.C. § 1675(a)(2)(B)(iii), 19 U.S.C. § 1623(e), and 19
C.F.R. § 113.40(a). Plaintiff, on the other hand, asserts that
Customs' actions were unlawful because they were contrary to
Customs' statutory mandate to "protect the revenue of the U.S."
because they deprived the sureties of the opportunity to cancel
what would prove to be risky bonds. However, this argument
fails because Customs is directed to protect, among other
things, the revenues of the United States, but not the revenues
of the sureties. 19 U.S.C. § 1484(a)(2)(C). See Cam-Ful
Indus., Inc. v. Fid. & Deposit Co., 922 F.2d 156, 162 (2d Cir.
1991) ("[t]he policy behind surety bonds is not to protect a

surety from its own laziness or poorly considered decision.").
While the sureties' revenues are arguably a part of the revenues
of the United States, in the same sense that every domestic
industry's revenues must be, Plaintiff's reading of Customs'
mandate is simply too broad.

　　　　Hartford further alleges that Customs abused its
discretion when it approved the Hubei bonds because it was aware
that Sunline was being investigated at the time.  Hartford
claims that Customs had begun its investigation into Sunline by
August 15, 2003 and therefore was the sole party that knew of
and was in a position to take preventative measures against
Sunline's criminal activities "based on its knowledge of
Sunline's contemporaneous bad acts involving the same class of
merchandise from the same country of origin."  Second Am. Compl.
¶¶ 16, 62.  But Plaintiff fails to provide any basis for the
court to plausibly infer abuse of discretion in Customs failure
to take broader action in response to its investigation.  See
Iqbal, 556 U.S. at 678.  Even construed in the light most
favorable to the Plaintiff, there is nothing in the pleadings
here to plausibly suggest that Customs' investigation had
proceeded to the stage where Customs had reason to believe the
Hubei entries were problematic or that new shipper bonds would
be insufficient security.  Hartford merely pleads that the
investigation into Sunline had begun two weeks before the last

Hubei bond was issued.  But the investigation did not involve the Hubei entries, but rather involved the entries of an entirely different supplier.  Def.'s Mot. at 13.  Without any connection to the Hubei entries, a bare allegation that Customs was investigating Sunline is insufficient to plausibly suggest abuse of discretion because it does not indicate any basis to infer that Customs' failure to require extra security or reject the bonds was clearly unreasonable, arbitrary, fanciful or in bad faith.  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570; Sterling, 16 F.3d at 1182.

Finally, Hartford argues at length that Customs abused its discretion when it did not reject the Hubei entries altogether because Customs had investigated and ultimately rejected another set of Sunline entries that preceded the Hubei entries without violating the confidential nature of the Sunline investigation. See Pl.'s Br. at 14;  Second Am. Compl. ¶¶ 19-21.  These entries are referred to as the "World Commerce" entries and were rejected when Customs concluded that Sunline had, with regard to those entries, falsified documents to reflect a different manufacturer.  Id.  This claim fails because the World Commerce entries suffered from a different flaw that was independent of, and not logically connected to, Sunline's default on the Hubei entries.  Plaintiff's pleadings indicate no rational connection between the Hubei entries, Sunline, and the

World Commerce entries other than conclusory allegations of the potential for violations.  Plaintiff's pleadings do not even suggest  how Customs' investigation of false documentation in one set of entries can plausibly lead to the conclusion that Sunline would default on the Hubei entries.  Accordingly, Plaintiff has failed to plead facts that plausibly suggest a rational connection between the Sunline investigation, the false documentation in the World Commerce entries, and the eventual default on the Hubei entries.  Therefore, there is no basis for the court to plausibly infer an abuse of discretion.

### CONCLUSION

For the reasons stated above, Customs' motion to dismiss for failure to state a claim is GRANTED.  Judgment will be entered accordingly.

_____/s/ Donald C. Pogue_____
Donald C. Pogue, Chief Judge


Dated: June 27, 2013
       New York, NY

Slip Op. 13 - 84

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>     Plaintiffs,<br><br>          v.<br><br>UNITED STATES<br><br>     Defendant. | Before: Donald C. Pogue,<br>          Chief Judge<br><br>Court No. 07-00067 |

## JUDGMENT

        The court having heard and decided this matter, now in accordance with that opinion, Customs' motion to dismiss is GRANTED.  This case is dismissed.


                              /s/ Donald C. Pogue
                         Donald C. Pogue, Chief Judge



Dated: June 27, 2013
       New York, NY